# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CONSTANCE BENNETT, : | |
| : | |
| Plaintiff, : | |
| : | Case No. 2:08-CV-663 |
| v. : | |
| : | Judge Algenon L. Marbley |
| BOARD OF EDUCATION OF : | |
| WASHINGTON COUNTY JOINT : | Magistrate Judge King |
| VOCATIONAL, : | |
| : | |
| Defendant. : | |

## OPINION & ORDER

## I. INTRODUCTION

This matter is before the Court on Defendant Board of Education of Washington County Joint Vocational's ("the Board") Motion to Dismiss Count II of Plaintiff's Complaint. (Doc. no. 7.) Plaintiff Constance Bennett ("Bennett"), sued the Board, her former employer, alleging wrongful discharge in violation of 42 U.S.C. § 12112(b)(4) of the Americans with Disabilities Act ("ADA") (Count I); wrongful non-renewal of an employment contract in violation of Ohio public policy (Count II); and breach of contract (Count III). The Board moves to dismiss Count II of Bennett's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is **GRANTED**.

## II. BACKGROUND[1]

Before her termination, Bennett was employed by the Board in two capacities pursuant to two employment contracts. She worked as the Board's Medical Programs Director/Supervisor – Adult Technical Training and as an Instructor of the Safety Supervisor course. The contracts for both positions expired on June 30, 2008. On February 26, 2008, Bennett met Carrie Johnson ("Johnson") and helped Johnson enroll in a one of the Board's training programs. Johnson is a disabled person under the Americans with Disabilities Act ("ADA").[2] When classes began, Bennett learned that Johnson had requested certain accommodations for her disability, including requesting books in audio format or in the alternative requesting that the school provide her with a Kurzweil Reader device. Bennett attempted to support Johnson in her requests.

To that end, Bennett met with the Board's Director of Adult Education, Dewayne Poling ("Poling") on March 3, 2008 and told him that she believed Johnson should be accommodated under the ADA. Poling disagreed and dismissed Johnson from school the next day. That same day, Bennett confronted Poling about Johnson's dismissal. Poling informed Bennett that he would recommend to the Board that Bennett's employment contract as Medical Programs Director/Supervisor – Adult Technical Training not be renewed. During the following week, Bennett continued to assert to Poling and to the Board that Johnson had a right to reasonable accommodation under the ADA

---

[1] The facts in this section are drawn from Bennett's Complaint and are, for the purposes of ruling on the Board's motion to dismiss, taken as true.

[2] According to Bennett's Complaint, Johnson has "various cognitive, reading and learning issues."

On March 11, 2008, the Board voted not to renew Bennett's contract as Medical Programs Director/Supervisor – Adult Technical Training. On March 24, 2008 Poling told Bennett that Bennett was required to leave the Board's premises. In the following days, Poling informed Bennett that although her employment contract as Medical Programs Director/Supervisor – Adult Technical Training was still in force, she would no longer be allowed to perform this position. Poling gave Bennett the option of staying home for the remainder of her paycheck and receiving paychecks or performing ministerial duties that were not part of her normal work. Bennett chose to stay home after March 24, 2008. A few weeks later the Board stopped direct deposit of Bennett's paycheck and then ceased paying Bennett altogether.

Bennett filed the present action with this Court on July 9, 2008. On December 19, 2008 the Board moved to dismiss Count II of Bennett's Complaint, the wrongful discharge in violation of public policy count. That motion is now before the Court.

### III. STANDARD OF REVIEW

A case may be dismissed if the complaint does not state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008)*; Murphy v. Sofamor Danek Gp.,Inc.*, 123 F.3d 394, 400 (6th Cir. 1997).

However, the Court is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 127 S. Ct. 1955 (2007)).

Although liberal, the Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion to dismiss. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). The complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007)). While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007). A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950 (*citing Twombly*, 550 U.S. at 556).

**IV. LAW & ANALYSIS**

In Count II of her Complaint, Bennett alleges that the Board wrongfully refused to renew her employment contract in violation of Ohio's "public policy against discharging an employee for supporting the enforcement of the rights of a student of a public school under Title II of the ADA." (Compl. ¶¶ 27-28.) Ohio recognizes a public policy exception to the doctrine of at-will employment. *Greeley v. Miami Valley Maintenance Contractors*, 551 N.E.2d 981, 986 (Ohio 1990). Under that exception, "an employer who wrongfully discharges an employee in violation of a clearly expressed public policy will be subject to an action for damages." *Collins v. Rizkana*, 652 N.E.2d 653, 656 (Ohio 1995). In order to state a claim of wrongful termination in

violation of public policy, a plaintiff must establish that: (1) a clear public policy existed and was manifested in a state or federal constitution, statute, administrative regulation, or the common law; (2) the public policy would be jeopardized by dismissing employees in circumstances similar to those of the plaintiff's dismissal; (3) the plaintiff's dismissal was motivated by conduct related to the public policy; and (4) the employer had no overriding legitimate business justification for the dismissal. *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 529-30 (Ohio 2002). Whereas the first two elements of a public policy claim, the clarity and jeopardy elements, are matters of law for the court to decide, the latter two elements, the causation and overriding justification elements, are factual issues for the trier of fact to determine. *Id.* at 530.

### A. Clear Public Policy

Bennett claims that Ohio has a clear public policy against "retaliation for opposing unlawful practices regarding a student who was being discriminated against under Title II of the Americans with Disabilities Act ("ADA")." (Pl.'s Opp'n Br. p. 3.) In other words, Bennett claims that Ohio has a public policy against workplace retaliation for opposing unlawful actions regarding a non-employment related statute. (*Id*.)

Under Ohio law, a public policy is "sufficiently clear" to support a wrongful discharge claim if its existence can be discerned from "the Constitutions of Ohio and the United States, legislation, administrative rules and regulations, [or] the common law." *Painter v. Graley*, 639 N.E.2d 51, 56 (Ohio 1994). Bennett does not allege that there is constitutional, legislative, or administrative support for an Ohio public policy claim. She contends, rather, that there is a common law support for her Ohio public policy claim.

### 1. Public Policy Based on Common Law

Bennett cites to four Ohio cases, which, she claims, recognize a public policy against discharging employees for opposing unlawful actions regarding a non-employment related statute. The first case is *Sabo v. Schott*, 639 N.E.2d 783 (Ohio 1994) , which recognizes a clear public policy against discharging an employee in retaliation for the employee testifying in court against the employer. *Id.* at 783. The second case is *Anders v. Specialty Chemical Resources, Inc.*, 700 N.E.2d 39 (Ohio Ct. App. 1997), which recognizes a clear public policy against discharging employees in retaliation for their refusal to participate in criminal acts. *Id.* at 44. The third case is *Armstrong v. Trans-Service Logistics, Inc.*, No. 04CA015, 2005 WL 1301691 (Ohio Ct. App. May 27, 2005), which recognizes a clear public policy against discharging employees for reporting entry of adulterated products into stream of commerce by employer. *Id.* at *7-*8. The fourth case is *Miller v. MedCentral Health Sys.*, No. 2005CA0049, 2006 WL 44290 (Ohio Ct. App. Jan. 6, 2006), which recognizes a clear public policy against discharging an employee for reporting food safety violations. *Id.* at *3-*4.

Contrary to Bennett's claim, however, none of these four cases establish such a general public policy against discharging employees for opposing unlawful actions regarding a non-employment related statute. Rather, each of the four cases states a specific individual public policy that Ohio recognizes. Because none of the cases to which Bennett cites establishes a clear public policy against the actions for which Bennett complains, this Court must look to other Ohio common law to determine whether such a clear public policy exists.

The Sixth Circuit noted in *Herlik v. Cont'l Airlines*, *Inc*., No. 04-3790, 2005 WL 2445947 (6th Cir. Oct. 4, 2005) that in practice, the Ohio Supreme Court has usually only found a clear public policy protecting an employee's activity when there is a statute that prohibits firing employees for engaging in a particular protected activity. *Id.* at *5; *Tracy v. Northrop Grumman Systems Corp.*, No. 1:08cv126, 2009 WL 690255, at *5 (S.D. Ohio Mar. 12, 2009). In other words, "the wrongful discharge tort provides the remedy where the statute is silent." *Herlik,* 2005 WL 2445947 at *5.

The Ohio Supreme Court has held only once, in *Collins v. Rizkana*, that Ohio had a clear public policy based not upon a statute, but rather upon common law. *Herlik,* 2005 WL 2445947 at *5. In *Collins*, a statute prohibiting sexual harassment did not specifically prohibit retaliatory discharge of employees who rejected sexual harassment, but the Ohio Supreme Court found that Ohio had a clear public policy against such discharge based upon common law. 652 N.E.2d at 658.

A search of Ohio case law has revealed no other case finding that Ohio has a clear public policy against discharging employees for supporting the enforcement of the rights of a student under the ADA, or against discharging an employee for opposing unlawful actions regarding a non-employment related statute.

**2. Public Policy Based on Federal Statute**

**a. 42 U.S.C.A. § 12203(a)**

Federal statutes, however, can also support a public policy wrongful discharge claim. *Wiles*, 773 N.E.2d at 530. Bennett acknowledges that federal statutes can support a public policy claim, but fails to set forth a federal statute that supports her claim. Her entire argument for

public policy is based on Ohio common law. Nevertheless, though it is Bennett's burden to establish a clear public policy, the clarity element is a matter of law for the Court to decide.

Title IV of the ADA contains a subchapter entitled "Miscellaneous Provisions." There is a "Prohibition against retaliation and coercion" section in that subchapter that states:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C.A. § 12203(a). According to 42 U.S.C.A. § 12132:

> . . . no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

Bennett has asserted that she: "expressed the opinion that Johnson was disabled and needed to be accommodated under the law" (Complaint ¶ 12); "confronted Poling about Johnson's dismissal" (*Id.* ¶ 13); and "continued to advocate to Poling and Defendant on Johnson's behalf and to assert that Johnson had a legal right to reasonable accommodation" (*Id.* ¶ 14). Due to these actions, Bennett claims her contract was not renewed and she was terminated. Therefore, Bennett has claimed she was discriminated against because she opposed an act---the discrimination against a disabled student---made unlawful by the ADA. The ADA therefore manifests a sufficiently clear public policy to satisfy the clarity element of a wrongful-discharge tort claim.

### b. Case Law Interpreting 42 U.S.C.A. § 12203(a)

In *Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808 (6th Cir. 2002) the plaintiff brought a disability claim against the Cuyahoga court for failing to provide him with

an adequate ADA accommodation during a prolonged custody dispute. The Sixth Circuit found that it was for a jury to decide whether discontinuing a plaintiff's custody hearing for a year and a half upon his refusal to waive his disability claim could constitute retaliation in violation of § 12203. *Id.* at 817. This case shows that retaliation claims under § 12203 can be brought for retaliation due to asserting ADA rights outside of the employment context.

Other district courts have recognized that a claim can be brought under § 12203(a) for supporting the enforcement of the rights of another under the ADA. In *Lester v. Compass Bank*, No. 96-AR-0812-S, 1997 WL 151782 (N.D. Ala. Feb. 10, 1997), the plaintiff asserted he was terminated from his employment not because he associated with or befriended a disabled person, but because he "championed the cause" of a disabled person. *Id.* at *3. The court held that, "[a]n individual who champions the cause of a disabled individual in the exercise of the disabled's rights protected by the ADA is most assuredly protected from reprisal or retaliation because of his acts." *Id.* The requirement, however, is that the individual must do more than just "champion the cause" but rather must "aid" or "encourage" the disabled individual in the exercise of his rights protected by the ADA. *Id.*; *see also Barker v. Int'l Paper Co.*, 993 F.Supp. 10, 15-16 (D. Me. 1998) (recognizing a prima facie case of employment retaliation when the plaintiff showed that he aided his wife in an ADA-protected activity and was retaliated against for that action). In *Cable v. Dep't of Developmental Servs. of Cal.*, 973 F.Supp. 937 (C.D. Cal. 1997), the district court found that a doctor's opposition to the treatment of disabled patients constituted protected activity under the ADA, so he had a valid claim for retaliation under 42 U.S.C.A. § 12203. *Id.* at 942.

There are even some cases in district courts outside this Circuit specifically involving ADA retaliation for asserting the rights of a disabled student. In *Garber v. Embry-Riddle Aeronautical Univ.*, 259 F.Supp.2d 979 (D. Ariz. 2003), the district court found there was a genuine issue of material fact as to whether a professor established a prima facie case that he was retaliated against in violation of 42 U.S.C.A. § 12203(a) for advocating on behalf of a disabled student. *Id.* at 983. The professor's claim, however, ultimately failed because he failed to establish pretext. *Id.* at 985. In *P.N. v. Greco*, 282 F.Supp.2d 221 (D. N.Y. 2003), the district court found there was a material issue of fact as to whether the school retaliated against parents for asserting rights for their special needs son under the ADA. *Id.* at 243.

These cases all establish that there is a clear public policy based on the ADA that protects individuals against retaliation for supporting the enforcement of another's rights under the ADA, and specifically, that there is a clear public policy based on the ADA that protects individuals against retaliation when they advocate for or assert rights for a disabled student.

**2. Jeopardy**

Establishing a clear public policy, however, is only one element of the Ohio public policy tort claim. Whether a plaintiff is entitled to pursue a wrongful discharge claim often comes down to the application of the jeopardy element of the claim. *Collins v. U.S. Playing Card Co.*, 466 F.Supp.2d 954, 974 (S.D. Ohio 2006). Under Ohio law, to prove the jeopardy prong of the public policy inquiry, a plaintiff must show that there is no other recourse or adequate remedy available to her. *Id*. This means Bennett must show that without a common-law tort claim for wrongful discharge in violation of public policy, Ohio's clear policy against retaliation for advocating for

a disabled person's ADA rights would be compromised because no other adequate remedy would be available to her.

The Ohio Supreme Court has held that a common-law claim for wrongful discharge in violation of public policy is not recognized where the plaintiff has sufficiently broad and inclusive remedies through statutes. *Provens v. Stark Cty. Bd. of Mental Retardation & Dev. Disabilities*, 594 N.E.2d 959, 966 (Ohio 1992); *see Collins*, 466 F.Supp. 2d at 974 (finding there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests). The Ohio Supreme Court has also held that Ohio law does not "recognize a common-law claim when remedy provisions are an essential part of the statutes on which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct." *Leninger v. Pioneer Nat'l Latex*, 875 N.E.2d 36 (2007). This Court must therefore examine the extent of the remedies that 42 U.S.C.A. § 12203 provides.

Remedies available to a party making a retaliation claim against an employer under the ADA are first determined by reference to 42 U.S.C. § 12117. Section 12117, in turn, provides that the available remedies are those provided by the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e-4 through e-9, 42 U.S.C. § 12117(a). Section 2000e-5(g)(1) provides that a court may order certain equitable relief including, but not limited to, back pay, but it does not provide for compensatory or punitive damages. However, the 1991 Civil Rights Act, 42 U.S.C § 1981a (a)(2), expands the remedies available under § 2000e-5(g)(1) in certain circumstances, to provide for compensatory and punitive damages. Specifically, § 1981a(a)(2) provides, in pertinent part, that:

> [i]n an action brought by a complaining party ... against a respondent who engaged in unlawful intentional discrimination ... under ... section 102 of the [ADA] or committed a violation of section 102(b)(5) of the [ADA], against an individual, the complaining party may recover compensatory and punitive damages ....

42 U.S.C. § 1981a(a)(2).

The Sixth Circuit has not decided whether compensatory and punitive damages are available for violations of § 12203. The only federal appellate court to have decided the issue is the Seventh Circuit in *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961 (7th Cir. 2004). In *Kramer*, the Seventh Circuit held that compensatory and punitive damages are not available for violations of § 12203. I*d.* at 964-66. There is a district court split in this Circuit as to whether a plaintiff making a claim of retaliation against an employer under the ADA can recover compensatory or punitive damages. *Compare E.E.O.C. v. Faurecia Exhaust Systems, Inc.*, 601 F.Supp. 2d 971, 976 (N.D. Ohio 2008) (finding a plaintiff may not recover compensatory or punitive damages for an ADA retaliation claim), *and Arredondo v. S2 Yachts*, 496 F.Supp. 2d 831, 837 (W.D. Mich. 2007) (same), *and Cantrell v. Nissan N. Am., Inc.*, No. 3:03-0082, 2006 WL 724549, at *2 (M.D. Tenn. Mar. 21, 2006) (same), *with Baker v. Windsor Republic Doors*, No. 1:06-cv-01137, 2009 WL 2064584, at *4 (W.D. Tenn. July 10, 2009) (finding that under § 1981(a)(2), a plaintiff may recover compensatory damages for an ADA retaliation claim).

Regardless of whether compensatory or punitive damages are available, that is ultimately irrelevant. Statutory remedies are not inadequate just because they provide something less than the full panoply of relief that would be available in a tort action for wrongful discharge (i.e. compensatory and punitive damages). *Wiles*, 96 Ohio St.3d at 247.[3] There is "no need to create

---

[3]Whether punitive damages are recoverable is irrelevant to any discussion of whether statutory remedies provides something close to make-whole tort relief because they are "designed not to

by judicial fiat further remedies by way of a [wrongful discharge in violation of public policy claim] when the [ADA] provides reasonably satisfactory ones." *See id.* at 248. Because there is still an avenue open to Bennett to enforce her rights, it cannot be said that the public policy against retaliation for advocating for a disabled person's ADA rights has been jeopardized by her discharge. *See Lower v. Electronic Data Systs. Corp.*, 494 F.Supp.2d 770, 776 (S.D. Ohio 2007).

## V. CONCLUSION

For the reasons stated above, the Board's Motion to Dismiss Count II of Bennett's Complaint (Doc. 7) is **GRANTED.**

**IT IS SO ORDERED.**

                                             s/Algenon L. Marbley
                                             **ALGENON L. MARBLEY**
                                             **UNITED STATES DISTRICT COURT**

**Dated: September 10, 2009**

---

compensate the plaintiff but, rather, to punish the defendant and deter future wrongdoing." *Id.* at 248.