IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CONSTANCE BENNETT, | : | |
| | : | |
| Plaintiff, | : | Case No. 08-CV-663 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| BOARD OF EDUCATION OF | : | Magistrate Judge King |
| WASHINGTON COUNTY JOINT | : | |
| VOCATIONAL SCHOOL DISTRICT | : | |
| | : | |
| Defendant. | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant Board of Washington County Joint Vocational School District's ("the Board") Motion to Dismiss Counts II and III of Plaintiff's First Amended Complaint. (Doc. 48). Plaintiff Constance Bennett's ("Bennett") First Amended Complaint alleges wrongful discharge in violation of 42 U.S.C. § 12112(b)(4) of the Americans with Disabilities Act ("ADA") (Count I); retaliatory non-renewal in violation of 42 U.S.C. § 12203(a) of the ADA (Count II); and breach of contract (Count III). The Board moves to dismiss Counts II and III of Bennett's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Motion is **DENIED.**

### II. BACKGROUND

#### A. FACTUAL BACKGROUND[1]

Prior to her termination, the Board employed Bennett, under separate contracts, as its Medical Programs Director/Supervisor—Adult Technical Training and as an Instructor of its Safety Supervisor course. The contracts for both positions expired on June 30, 2008.

---

[1] The facts in this section flow from Bennett's First Amended Complaint and are, for the purposes of ruling on the instant motion, taken as true.

On February 26, 2008, Bennett met with Carrie Johnson ("Johnson") and helped Johnson enroll in the Board's Surgical Technologist program. Johnson is a disabled person under the Americans with Disabilities Act ("ADA").[2] Johnson started classes on February 27, 2008 and requested certain accommodations for her disability, including requesting books in audio format or, in the alternative, that the school provide her with a Kurzweil Reader device. Bennett attempted to support Johnson in her requests.

In an effort to aid Johnson in obtaining her requested accommodations, Bennett met with the Board's Director of Adult Education, Dewayne Poling ("Poling") on March 3, 2008. In that meeting Bennett communicated to Poling her belief that Johnson should be accommodated under the ADA. Poling disagreed. He told Bennett that the school would not accommodate Johnson and, on March 4, 2008, dismissed Johnson from the school. That same day, Bennett confronted Poling about Johnson's dismissal. When confronted, Poling informed Bennett that he would recommend to the Board that Bennett's employment contract as Medical Programs Director/Supervisor—Adult Technical Training not be renewed. Throughout the following week, Bennett continued to advocate to Poling and to the Board that Johnson had a right to reasonable accommodation under the ADA.

On March 11, 2008, the Board voted not to renew Bennett's contract as Medical Programs Director/Supervisor—Adult Technical Training. Bennett was informed of the Board's decision through a March 14, 2008 letter from the Treasurer of the Board, and on March 24, 2008, Poling told Bennett that she was required to leave the Board's premises. In the days following March 24, 2008, Poling informed Bennett that although her employment contract was still in force, she would not be permitted to perform her duties as Medical Programs

---

[2] According to Bennett's First Amended Complaint, Johnson has "various cognitive, reading and learning issues."

2

Director/Supervisor—Adult Technical Training. Poling then gave Bennett the option of staying home for the duration of her contract and receiving paychecks, or performing ministerial tasks that were not part of her normal duties. Bennett elected to stay home. A few weeks later, the Board stopped the direct deposit of Bennett's paychecks, and then stopped paying Bennett altogether. Bennett then filed the present action with this Court.

### B.  PROCEDURAL HISTORY

Bennett filed her initial Complaint on July 9, 2008 alleging wrongful discharge in violation of 42 U.S.C. § 12112(b)(4) of the ADA (Count I); wrongful non-renewal of an employment contract in violation of Ohio public policy (Count II); and breach of contract (Count III). On December 19, 2008, the Board moved to dismiss Count II of Bennett's Complaint for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). On September 10, 2009, this Court issued an Order granting the Board's motion. *Bennett v. Board of Education of Washington County Joint Vocational*, 2009 WL 2973001, at *1 (S.D. Ohio). Bennett responded by filing her First Amended Complaint on April 13, 2010, in which she reasserted Counts I and III of her initial Complaint, and substituted a claim for retaliatory non-renewal under 42 U.S.C. § 12203 of the ADA for her dismissed Ohio public policy claim. Bennett later stipulated to the dismissal of Count I of her First Amended Complaint—wrongful discharge under 42 U.S.C. § 12112(b)(4)—leaving only her claims for retaliatory non-renewal and breach of contract pending. The Board moved to dismiss Bennett's remaining claims by way of an April 27, 2010 motion. That motion is now before the Court.

### III.  STANDARD OF REVIEW

To withstand a 12(b)(6) motion to dismiss, a complaint must plead facts sufficient to state a claim on which relief can be granted. Fed.R.Civ.P. 12(b)(6). "A motion to dismiss for

failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court must view the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *Murphy v. Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). The Court, however, is not required to credit as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, ---U.S.---, ---, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Indeed, the assertion of bare legal conclusions void of factual support will not survive a motion to dismiss. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted).

A complaint need not contain "detailed factual allegations." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929. However, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929. Additionally, the complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct 2197, 2200, 167 L.Ed.2d 1081 (2007)). A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950 (*citing Twombly*, 550 U.S. at 556). Accordingly, courts should dismiss those claims that cannot be "nudged . . . across the line from conceivable to plausible . . . ." *Id.* at 1974.

## IV.  LAW & ANALYSIS

## A. AMERICANS WITH DISABILITIES ACT[3]

In Count II of her First Amended Complaint, Bennett asserts a claim for unlawful retaliation under Title V of the ADA. (First Am. Compl. ¶¶ 26-32). *See* 42 U.S.C. § 12203(a). Bennett alleges that the Board retaliated against her for protesting practices she claims are unlawful under the ADA by voting not to renew her employment contract.

The Americans with Disabilities Act prohibits "discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004), 124 S.Ct. 1978, 158 L.Ed.2d 820. *See* 42 U.S.C. §§ 12111-12117 (Title I); 42 U.S.C. §§ 12131-12165 (Title II); 42 U.S.C. §§ 12181-12189 (Title III). Title V contains a variety of miscellaneous provisions, including the ADA's anti-retaliation provision which provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such an individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007); *McCollum v. Owensboro Community & Technical College*, No. 4:09CV-00121-M, slip op., 2010 WL 1742379 at 2 (W.D. Ky., April 29, 2010).

---

[3] The Sixth Circuit has not yet addressed the precise issue presented by this case. Namely, whether the title of the ADA upon which a claimant's Title V claim is based is determined by the underlying violation of the ADA opposed by the claimant or the nature of the retaliatory action taken against the claimant. Other circuits have addressed this issue. Therefore, this Court looks to the persuasive case law of those circuits for guidance.

As the basis for its motion, the Board argues that Bennett's Title V retaliation claim is barred for failure to exhaust administrative remedies because she did not present the claim to the Equal Employment Opportunity Commission ("EEOC") and obtain a right-to-sue letter. "Whether an ADA claim must first be presented to an administrative agency depends on which precise title of the ADA the claim invokes." *McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007). If the claimant presents a claim under Title I, which prohibits employment discrimination, the claimant must file a charge with the EEOC prior to initiating litigation. *Id*. This administrative-exhaustion requirement is the result of Title I's incorporation of 42 U.S.C. § 2000e-5, a provision of Title VII of the Civil Rights Act of 1964 which requires such administrative-exhaustion. *See Id.*; 42 U.S.C. § 2000e-5(e)(1). Titles II and III of the ADA, however, do not incorporate 42 U.S.C. § 2000e-5, and therefore do not require claimants to exhaust their administrative remedies prior to initiating litigation. *See Bogovich v. Sandoval*, 189 F.3d 999, 1002 (9th Cir. 1999) ("There is no exhaustion requirement for claims brought under Title II of the ADA."); *McInerney*, 505 F.3d at 138 ("This administrative-exhaustion requirement . . . is not found in ADA Title III.").

In this case, Bennett's retaliation claim is brought pursuant to Title V of the ADA. Title V creates "a set of remedies and procedures which depends on the title of the ADA underlying the retaliation claim." *Cable v. Dep't. of Developmental Serv.'s of the State of Cal.*, 973 F.Supp. 937, 940 (C.D. Cal. 1997). Title V states, "the remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II, and subchapter III of this chapter, respectively." 42 U.S.C. § 12203(c). The statute indicates that Congress intended the remedies and procedures of the title underlying a claimant's retaliation claim to be

6

applied to the victims of retaliation. *See Cable*, 973 F.Supp. at 940. Thus, if an individual is retaliated against for protesting acts that violate Title II of the ADA, the remedies and procedures of Title II apply to that individual's Title V retaliation claim. *Id.*; *Manigaulte v. C.W. Post of Long Island University*, 659 F.Supp.2d 367, 380 (E.D.N.Y. 2009) (no exhaustion required since plaintiff was retaliated against for objecting to actions that violated Title III). The issue that the Court must now decide, therefore, is whether Bennett's Title V claim is predicated on Title I (the employment title) or Title II (the public services title) of the ADA.[4]

The Board argues that the nature of the retaliatory action taken against a claimant determines the title upon which the claimant's Title V claim is based. For example, under the Board's view, if a claimant opposes action taken by her employer that violates or could violate Title II of the ADA, and, as a result, suffers adverse employment action at the hands of her employer, her Title V claim is based upon Title I, not Title II, because she suffered an adverse employment action. The Board's view, however, is mistaken. As the court in *Cable* pointed out, the language of 42 U.S.C. § 12203(c) demonstrates that "Congress intended the enforcement remedies and procedures established for Title II violations . . . to be applied to persons who have suffered retaliation for objecting to acts or practices which violate Title II." *Cable*, 973 F.Supp. at 940. Thus, in a Title V retaliation case, the court must determine which title of the ADA the conduct opposed by the claimant allegedly violated to determine upon which title of the ADA the claimant's Title V retaliation claim is based. *Id*. If a claimant opposes acts made unlawful by Title II of the ADA, and as a result suffers retaliation, it is Title II of the ADA that underlies the individual's Title V claim regardless of the form of retaliation visited upon the individual. *See Id.* (plaintiff's Title V retaliation claim was predicated upon Title II because the plaintiff suffered adverse employment action as a result of his opposition to practices allegedly unlawful

---

[4] Title III of the ADA, as recognized by the parties, is not relevant to this case.

7

under Title II); *Manigaulte*, 659 F.Supp.2d at 379-80 (plaintiff's Title V claim was predicated upon Title III because he objected to acts of the defendant that were allegedly unlawful under Title III).

The Board cites numerous cases in support of its argument that it is the retaliation itself that determines the title upon which a claimant's Title V claim is based. All of the cases cited by the Board, however, are readily distinguishable from the present case. Most notably, a large number of cases relied upon by the Board involve the claims of disabled persons who were allegedly discriminated against in their employment on account of their disability.[5] *See, e.g.*, *Knapp v. City of Columbus*, 93 Fed. Appx. 718 (6th Cir. 2004) (Title I and Title II claims brought by employee firefighters due to alleged failure of employer to accommodate their mental disabilities); *McKibben v. Hamilton County, Ohio*, 215 F.3d 1327 (Table) (6th Cir. 2000) (Title I claim brought by employee correctional officer due to employer's alleged failure to accommodate his disability caused by extreme obesity); *Zimmerman v. Oregon Dept. of Justice*, 170 F.3d 1169 (9th Cir. 1990) (Title II claim brought by employee due to employer's failure to accommodate employee's disabling eye condition); *Richardson v. Dayton Public Schools*, No.3:10-cv-028, slip.op., 2010 WL 1882306 (S.D. Ohio April 23, 2010) (ADA claims brought by employee due to alleged direct discrimination); *Scherman v. New York State Banking Dep't.*,No. 09 Civ. 2476, slip. op., 2010 WL 997378 (S.D.N.Y. March 19, 2010) (Title II claim brought by employee due to alleged failure of employer to accommodate her disability caused by carpal tunnel syndrome); *Canfield v. Issacs*, 523 F.Supp.2d 885 (N.D. Ind. 2007) (Title II claim brought by employee due to employer's alleged failure to accommodate his various physical disabilities); *Brettler v. Purdue University*, 408 F.Supp.2d 640 (N.D. Ind. 2006) (Title I and Title

---

[5]This case, in contrast, involves a claimant who was allegedly retaliated against for opposing practices made unlawful by the ADA.

II claims brought by graduate student due to university's alleged failure to accommodate student's narcoleptic condition); *Syken v. State of New York*, No. 02 Civ. 4673, 2006 WL 3771095 (S.D.N.Y. Dec. 21, 2006) (age and race discrimination claims under Title VII of Civil Rights Act of 1964 brought by employee against his employer for alleged failure to promote); *Dean v. Bay City*, 415 F.Supp.2d 755 (E.D. Mich. 2006) (Title II claim brought by employee due to employer's alleged failure to accommodate his alcohol-induced disability). In such instances Title I clearly applies, and any effort to bring a "pure employment" claim under Title II, as the Board suggests, strains the statutory language. *See Parker v. Metro. Life Ins.*, 121 F.3d 1006, 1014 (6th Cir. 1997); *Zimmerman*, 170 F.3d at 1174. The present case, however, does not present a "pure employment" claim, but a retaliation claim. The cases cited by the Board are, as a result, material only to the extent that they shed light on whether the alleged discrimination suffered by Johnson, and objected to by Bennett, violated Title I or Title II.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Viewed in the light most favorable to Bennett, the facts alleged in her First Amended Complaint demonstrate that her retaliation claim invokes Title II, not Title I, of the ADA. The conduct of the Board opposed by Bennett was the Board's alleged refusal to provide reasonable accommodations for a disabled student, Carrie Johnson, in the form of audio text books or a Kurzweil Reader device, and the Board's subsequent dismissal of Johnson. (First Am. Compl. ¶¶ 5-14). Thus, because Bennett claims that she suffered retaliation due to her opposition to conduct that allegedly violated Title II of the ADA, she need not exhaust her administrative remedies prior to coming to this Court. *See Cable*, 973 F.Supp. at 940.

## B.  BREACH OF CONTRACT

The Board asserts that "[u]pon the dismissal of Bennett's ADA retaliation claim, her Amended Complaint asserts only a breach of contract action. That cause of action is more properly determined by a State of Ohio Common Pleas Court of competent jurisdiction." The Board's assertion would be true if Bennett's ADA claim warranted dismissal. When a district court dismisses the only claim of a plaintiff over which it has original jurisdiction for failure to state a claim, there is a strong presumption that it should decline to exercise supplemental jurisdiction over the plaintiff's state law claims. *See Musson Theatrical, Inc.*, 89 F.3d 1244, 1255-56 (6th Cir. 1996). Bennett's ADA claim, however, has survived the Board's motion to dismiss. This Court may therefore exercise supplemental jurisdiction over Bennett's state law breach of contract claim because that claim and the ADA claim "derive from a common nucleus of operative fact". *See* 28 U.S.C. § 1367(a); *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 209 (6th Cir. 2004). Bennett's contract claim, like her ADA claim, is premised on the actions of the Board taken against her when she objected to the Board's alleged failure to accommodate a disabled student. Accordingly, the exercise of supplemental jurisdiction is proper, and the Board's argument that Bennett's contract claim should be dismissed for lack of jurisdiction must fail.

## V.  CONCLUSION

For the reasons state above, the Board's Motion to Dismiss Counts II and III of Bennett's First Amended Complaint is **DENIED.**

**IT IS SO ORDERED.**

                                            **s/Algenon L. Marbley**
                                            **Algenon L. Marbley**
                                            **United States District Judge**

**Date: October 4, 2010**